STATE, Respondent v. SCOTT and ECKERD, Appellants

(173 N.W.2d 287)

(File Nos. 10579, 10580.  Opinion filed December 26, 1969)
Rehearings Denied January 23, 1970

**Gordon Mydland,** Atty. Gen., **Edward M. Blando,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

**Clayton H. Shrout,** Omaha, Neb., **Ray P. Murley,** Salem, for defendants and appellants.

BIEGELMEIER, Presiding Judge.

Defendants appeal from their Judgments and Sentences entered on jury verdicts of guilty of grand larceny and third degree burglary.

About 2:45 on the morning of October 20, 1967 the manager of the Farmers Union Oil Company of Fedora was awakened by a buzzer in his home which was activated by an apparatus on the inside doors of the service station. He immediately called the Miner County Sheriff, dressed and stepped outside of his house to observe and investigate the cause. He observed two men coming from his station and walking on Highway 34 in his direction toward Main Street about a block away. The men turned to the right away from him when they reached Main Street, walked down the sidewalk and entered the Fox Hardware Store; sometime later he saw them come out of the store and cross the street toward the Green Oil Station.

The sheriff arrived within 15 minutes, picked up the manager and they drove into an alley behind Green Oil. While this sheriff and the deputy were coming to Fedora arrangements were made by shortwave radio to call officers from other communities · to converge at and take up stations around Fedora. There were several officers in four radio cars. Except for a large truck, they observed no traffic on the highways in the vicinity of Fedora at that time of night. Fedora is an unincorporated settlement of about 100 persons.

After he had the area secured by checking and stationing the other officers, the sheriff started a search. About a mile away, but in the same section as Green Oil and as he approached Highway 34 from the south, he saw a car back out of a driveway of a field. He observed its red taillights as it did so and then its headlights were turned on and the car drove across Highway 34 and continued on north at a high rate of speed ahead of the sheriff. The sheriff followed this car some distance and stopped the car and, after a rather cursory search and some conversation, suggested that they follow him back into Fedora but did not arrest them. Some further conversation took place there and, after a short time, the officers advised these men they were not being held and they drove away.

The investigation continued, however, and the sheriff with the other officers by the aid of their car lights and spotlights went over the highway and adjacent area again. Within forty-five minutes the officers reached the spot where they had seen the car back out of the driveway. They found three cotton gloves and $55.12 in coins scattered on the ground. Some of the coins were odd or unusually marked and were identified as having been left in the safe in the Peterson Elevator the evening before which the officers later learned had been broken into. A rough sketch in evidence showed this area to the east of Green Oil was an alfalfa field and then pasture land. A person continuing east from Green Oil would be met with at least three north and south barbwire fences—one on the west and a second on the east of a pasture with a third beyond that along the section line. Access through this fence was the driveway on the west side where the coins were found. The only access to the center pasture field was a driveway in the southeast corner onto 34.

The investigation continued into the daylight hours when a wrecking bar, identified as taken from the Peterson Elevator, was found in grass next to the alfalfa field behind (and to the east of) Green Oil. In the same general area and on to the east in the alfalfa field a double-pronged pry bar, a machinist's hammer or bar, a jimmy bar, a long pry bar and two 17-inch screwdrivers were found. Beyond the east fence of this field, which

is the west fence of the pasture, there were two sets of car tracks, one set led directly from the south gate northwest to an area east of Green Oil; the other set indicated the car, on its return, had first driven into the pasture east fence, backed up and then went out the driveway at the southeast corner of the pasture onto 34. This was not far from the other driveway around the section line corner where the car in which defendants were stopped and the coins were found. When the car ran into the pasture fence paint samples were left on it. They were sent to the F.B.I. Laboratory together with samples of paint taken from defendants' car for analysis. Expert evidence by a physicist was to the effect that in chemical, pigment and physical appearance they were similar.

Defendants made a motion for a directed verdict which the court denied and assigns the ruling as error. Upon appeal the correctness of the motion may be reviewed and the sufficiency of the evidence to justify the verdict is thus presented. State v. Nelson, 80 S.D. 574, 129 N.W.2d 54.

I.

In State v. Bates, 76 S.D. 23, 71 N.W.2d 641, the court considered the effect and construction of the present statute (then SDC 34.3650, now numbered SDCL 1967, § 23-45-5) authorizing the court in a criminal action to "**direct** the jury to return a verdict of acquittal" instead of the former statute (§ 4894, Rev.Code 1919) providing for the **advising** of a verdict of acquittal. (emphasis supplied) The court wrote:

> "However, it is our view that the rule announced by this court under the former statute as to when a verdict should or should not be advised, applies under the present statute when the motion for a directed verdict of acquittal is predicated on the insufficiency of the evidence. State v. Halladay, 68 S.D. 547, 5 N.W.2d 42."

The reasons stated in defendants' motion were the State failed to sustain its burden proving its case; failed to prove or elicit

any facts to prove defendants guilty; the State elicited only circumstantial evidence so weak it failed to prove defendants guilty beyond a reasonable doubt, excluding all other reasonable hypotheses. This falls short of compliance with our law. Accepting the State v. Bates decision that while SDC 34.3650 (now SDCL 1967, 23-45-5) did not specify the conditions governing the exercise of the court's authority to direct a verdict, the rule applying to its predecessor Section 4894, R.C. 1919 governs, we examine cases decided under it. State v. Kirby, 34 S.D. 281, 148 N.W. 533, and State v. Jerke, 1949, 73 S.D. 64, 38 N.W.2d 874, held sufficiency of the evidence could not be reviewed under such a motion when no "grounds were specified wherein there had been a failure of proof" or "did not particularize the claimed deficiency or failure of proof". The motion may not be a general statement of failure of proof but must point out wherein the proof fails. This is only stating in another way the requirement of other statutes and rules applicable. SDCL 1967, § 23-1-3 makes all the provisions of Titles 15, 16, 19, 21 and 30 (being the Rules of Civil Procedure) applicable to criminal procedure except in certain instances not here pertinent. Under Supreme Court Rules 143, 144 and 145 of 1939 (S.D.C. 33.1314-15-16) the court said denial of the motion was not reviewable where it failed to specify the particulars wherein the evidence was claimed to be insufficient. Allen v. Line, 1948, 72 S.D. 392, 34 N.W.2d 835. SDCL 1967, § 15-6-50(a), RCP 50(a) repeats this same guide as "A motion for a directed verdict shall state the specific grounds therefor." This rule therefore is applicable to criminal actions.

Nevertheless, as this is the first criminal action in which the court has announced that grounds of failure of proof must be specifically stated in SDCL 1967, § 23-45-5 motions made in criminal actions and defendants' counsel who mainly tried the action, wrote the briefs and argued the appeal is not a member of the South Dakota Bar, we have read the whole of the transcript to discover if the evidence supports the jury verdict. The statement of facts above (and additions hereafter) can be neither complete nor encompassed in an opinion of reasonable length.

## II.

■ ■ To warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent. State v. Thomas, 1960, 78 S.D. 568, 105 N.W.2d 549; State v. Carlson, 1962, 79 S.D. 411, 112 N.W.2d 891. However, the last phrase of this rule does not mean that the evidence must be such as to exclude every possible hypothesis of innocence; rather, it requires only the exclusion of reasonable hypothesis of innocence. State v. Thomas, supra. As the court said in the Thomas opinion we have examined the record with care and are compelled to the conclusion that under this record and in conformity with the rule announced, the jury could reasonably conclude defendants were guilty of the offenses charged. That was a function for a jury to determine in compliance with the dictates of State v. Bates, supra, where the court, quoting from a text and former opinion, stated:

" 'where the facts offered in evidence by the plaintiff, if true, make out a prima facie case, the jury, and not the judge, ought to pass upon them.' "

■ The jury could find someone broke into the Peterson Elevator prior to 2:45 a. m. and a wrecking bar and between $50 to $60 in silver and some odd identifiable coins were taken; about 2:45 a. m., activated by a person inside the Farmers Union Service Station, an alarm buzzer at the manager's home awakens him; two tall men (defendants are six feet or over) with hats are seen coming from the station (later a hat found in a ditch along where they drive when followed by a car of officers); the two men enter a hardware store, cross the street toward another oil station (later in the grass and fields behind and east of it are found the Peterson wrecking bar with other bars and tools); on farther east are two sets of tracks made by a car coming in and going out of the pasture which, in attempting to go out the wrong way scrapes paint from the car on the fence; within minutes defendants are sitting in this car, it having similar paint

as on the fence wire; and there the stolen silver and identifiable coins are found on the ground; when a searching officers' car appears, defendants drive away at a high rate of speed.

## III.

At the trial defendants made a motion for change of venue under SDCL 1967, § 23-28-7. It is not clear whether the motion was made before or after the jury was sworn, but was made after all jurors were examined and a jury selected. It was based on a statement of counsel for defendants dictated in the record. The motion was properly denied. The cited statute requires the motion be made "before the trial is begun" and be based on "affidavits or other evidence". It was not timely, State v. Johnson, 24 S.D. 590, 124 N.W. 847, nor was it based on affidavits or other evidence in the record before us.

Other claims of error as to admission of evidence cannot be sustained.

The judgments are affirmed.

ROBERTS, J., and ANDERSON, Circuit Judge, concur.

RENTTO, J., concurs specially.

HOMEYER, J., joins in the special concurrence.

ANDERSON, Circuit Judge, sitting for HANSON, J., disqualified.

RENTTO, Judge (concurring specially).

I concur in the opinion except that part which holds that the denial of a motion to direct a verdict of acquittal on grounds of insufficiency of the evidence is not reviewable unless the particulars wherein the evidence was claimed to be insufficient are specified.

In support of this view State v. Kirby, 34 S.D. 281, 148 N.W. 533 and State v. Jerke, 73 S.D. 64, 38 N.W.2d 874 are cited. The motion in the Kirby case was made when our statute provided for only an advised verdict of acquittal. At that time it was well established that error could not be predicated upon a court's refusal to advise a verdict of acquittal. State v. Stone, 30 S.D. 23, 137 N.W. 606. Obviously, if reversible error could not be predicated on the denial of a motion to advise, it should make no difference whether the deficiency in the evidence was specified or not. The motion in the Jerke case was made under our present statute, but it was premised on the holding in the Kirby case. Moreover, since it held the evidence to be sufficient what is said in that decision about this matter is dictum.

The rule which the majority adopts is our rule in civil matters. They hold that such rule is made a part of our criminal procedure by incorporation under SDCL 1967 23-1-3. I do not agree. That section provides:

"All of the provisions of titles 15, 16, 19, 21 and 30, so far as consistent herewith, shall be applicable throughout this title except as to matters for which a different provision is made in this title or where from the context of this entire title or of any particular section of it a different intention plainly appears or where reasonable application of this title to the matter involved otherwise plainly requires."

SDCL 1967 23-45-5, which came into our law of criminal procedure with the 1939 code revision, provides:

"At any time after the evidence on either side is closed, the court may, upon motion of the defendant, direct the jury to return a verdict of acquittal, and in the event of the failure of the jury to return such verdict of acquittal, the court may refuse to receive any other verdict and may discharge the jury and enter a judgment of acquittal.

"The denial of the motion may be reviewed upon appeal to the Supreme Court by the defendant."
It seems to me that by this statute a different provision is made in our criminal procedure concerning motions for directed verdicts than is provided in civil cases. It appears to me that the legislature did not intend that our civil rule concerning motions for directed verdicts should be integrated in our criminal procedure by the reference relied on. In effect, the decision amends the legislative enactment embodied in SDCL 1967 23-45-5.

Since we hold that the evidence is sufficient to justify the verdict there seems to be no necessity for discussing this matter which is neither urged nor argued. If we are to promulgate a rule of criminal procedure I would prefer that it be done pursuant to procedures provided in SDCL 1967 16-3 rather than by decisional dictum.

Rule 29(a) of the Federal Rules of Criminal Procedure concerning motion for judgment of acquittal is quite similar to our 23-45-5 in the regard here in issue. It provides:

"Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right."

Concerning it the court in United States v. Jones, 7 Cir., 174 F.2d 746, wrote:

"It is a challenge to the Government in the presence of the court that the Government has failed in its proof.

The motion is not required by the rules to be in writing or to specify the grounds therefor. That in itself would indicate that the defendant is not required to go over the proof for the benefit of the Government or the court, in the absence of some request for more specific objection. \* \* \* The Government has a duty to perform. First, it must prove its case on the record and that includes the proof of venue. Second, if that proof is challenged as to sufficiency by a general motion for acquittal, it is the Government's duty to require the defendant to be specific in his objection, and a failure to do so will not enable the Government on appeal to say that the question was not specifically raised below. If it was not, that was the Government's fault. Surely, the defendant does not have to lead the Government through the various steps of the trial to insure a proper record for the Government to stand upon. The Government cannot be heard to say it does not know the significance of a motion for acquittal."

See also Huff v. United States, 5 Cir., 273 F.2d 56.

In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, it was held that a trial judge before accepting a plea of guilty must ascertain the existence of a factual basis for the specific charge to which the plea is entered. Absent such the conviction will be set aside. If this is constitutionally required when the conviction is the result of a guilty plea is it not similarly required when the conviction is based on a jury verdict? Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, reh. den. 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200; and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, reh. den. 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377, appear to annunciate a legal philosophy which says that federally protected due process requires a review on the merits in criminal cases. Assistance of counsel has been made necessary in this endeavor if there are arguable issues.

I am authorized to state that HOMEYER, J., joins in this special concurrence.